UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KATHERINE FREEMAN,

     Plaintiff,

v.                           Case No.:  8:20-cv-2229-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff Katherine Freeman seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. With leave of Court, Plaintiff filed a Reply (Doc. 35). As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.   Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.   Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.    Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on May 3, 2018, alleging disability beginning July 27, 2017. (Tr. 70, 157-163). The application was denied initially on June 18, 2018, and upon reconsideration on October 17, 2018. (Tr. 70, 85). Plaintiff requested a hearing and a hearing was held on September 17, 2019, before Administrative Law Judge ("ALJ") Norman Zamboni. (Tr. 31-57). On December 24, 2019, the ALJ entered a decision finding Plaintiff not disabled from July 27, 2017, through the date of the decision. (Tr. 15-25).

Plaintiff requested review of the hearing decision, but the Appeals Council denied Plaintiff's request on July 22, 2020. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on September 22, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 24).

## D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022. (Tr. 17). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 27, 2017, the alleged onset date. (Tr. 17). At step two, the ALJ found that Plaintiff had the following severe impairments: "iron deficiency

anemia; obesity status-post gastric bypass surgery; small fiber polyneuropathy; osteoarthritis of the knees; cervical spine degenerative disc disease and stenosis; low back pain." (Tr. 17). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 19).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. § 404.1567(b) except the claimant can frequently climb stairs and ramps, and balance; she can occasionally stoop, kneel, crouch, and crawl; she cannot climb ladders, ropes, or scaffolds; the claimant must avoid concentrated exposure to unprotected heights, moving machinery, extreme temperatures, extreme humidity, and extreme wetness.

(Tr. 19). The ALJ found Plaintiff was able to perform her past relevant work as a Medical Case Management Supervisor. (Tr. 24). The ALJ found that in comparing Plaintiff's RFC with the physical and mental demands of this work, this position does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 24). The ALJ further found Plaintiff is able to perform this job as she actually performed it. (Tr. 25). The ALJ concluded that Plaintiff had not been under a disability from July 27, 2017, through the date of the decision. (Tr. 25).

## II.     Analysis

On appeal, Plaintiff raises the following three issues: (1) whether the ALJ properly evaluated Plaintiff's subjective complaints of pain; (2) whether the ALJ erred in failing to evaluate Plaintiff's hand-related limitations in the RFC assessment; and (3) whether the ALJ erred in determining that Plaintiff could perform her past relevant work. (Tr. 13, 18, 28). The Court addresses each issue in turn.

### A.     Evaluation of Subjective Complaints

Plaintiff argues that her subjective testimony concerning the pain in her hands is supported by medical evidence of record and is itself sufficient to support a finding of disability. (Doc. 34, p. 13). The Commissioner contends that the ALJ properly considered Plaintiff's subjective complaints in assessing the RFC. (Doc. 34, p. 14).

A claimant may establish that she is disabled through her own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210).

When evaluating a claimant's testimony, the ALJ should consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication to alleviate pain or other symptoms; (5) treatment other than medication for relief of pain or other symptoms; (6) any measures a claimant uses to relieve pain or other symptoms; and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019). The ALJ must consider these factors given all of the evidence of record. *Ross*, 794 F. App'x 867. And if the ALJ discredits this testimony, then the ALJ "'must clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting *Dyer*, 395 F.3d at 1210). The ALJ may consider the consistency of the claimant's statements along with the rest of the record to reach this determination. *Id.* Such findings "'are the province of the ALJ,' and we will 'not disturb a clearly articulated credibility finding supported by substantial evidence.'" *Id.* (quoting *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014)). A decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted).

In the decision, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." (Tr. 22). In support of that determination, the ALJ acknowledged the evidence demonstrated that Plaintiff had a history of paresthesia in her upper and lower extremities and was diagnosed with small fiber polyneuropathy. (Tr. 22). The ALJ also acknowledged that during the relevant period, Plaintiff reported increased numbness and pins and needles sensation in her extremities. (Tr. 22). But the ALJ found that the physical exams noted only mild dysesthesia, with normal grip strength and normal muscle strength in all extremities. (Tr. 22). The ALJ also found that the limitations in the RFC to light work with postural limitations addressed Plaintiff's severe impairments, including pain in her lower extremities. (Tr. 22). Further, the environmental limitations accounted for Plaintiff's polyneuropathy, "although there is minimal evidence of symptoms related to this impairment as noted by the normal muscle strength, grip strength, and generally normal sensation. (Ex. 1F, 3F, 5F, 6F, 8F)." (Tr. 22). And earlier in the decision, the ALJ noted that even though Plaintiff claimed her impairments limited her ability to perform usual daily activities, she reported she was able to manage her own personal care with some difficulties, prepare simple meals, do light household chores, drive a car, shop for groceries and

personal items, manage her finances, and take her medication without reminders. (Tr. 20).

In support of her position, Plaintiff claims that the record "is rife" with her contentions concerning her hand pain, which resulted in her inability to be able to type or use a computer for any length of time. (Doc. 34, p. 13). Plaintiff also contends that her claims are supported by objective medical evidence from her treating neurologists, Alberto B. Vasquez, M.D. and William C. Hulley, D.O. (Doc. 35, p. 1).

Chronologically, Plaintiff first cites a June 2017 medical record from a visit with neurologist, Adam S. DiDio, M.D. (Tr. 347). At this visit, Plaintiff complained of the following:

> She reports that she is having a hard time walking [and] her hands [are] very painful almost all of the time. She has difficulties holding onto things. Her grip strength is worsened. She has been gaining weight as well This makes it hard for her to work on a computer She is only able to work a few hours per day before she develops a lot of pain. Even after that she has trouble for 2 or 3 days at a time because of her chronic pain condition. The patient would like to go on FMLA. She is thinking about looking for different type of job so she doesn't have so much computer time.

(Tr. 347). Dr. DiDio found Plaintiff's condition had not changed and continued her on Cymbalta and Vyvanse and set a follow-up for six months. (Tr. 348).

Plaintiff next cites an August 18, 2017 office visit to Dr Vasquez. (Doc. 35, p. 2; Tr. 335). At this visit, Plaintiff reported that even with medication, she still

suffered from regular breakthroughs of painful paresthesia in both arms and legs, her grip became weak, increased pins and needle sensation in her left hand, which wakes her during the night, and her right hand was minimally involved. (Tr. 335). While many tests returned normal results, a skin nerve biopsy with specimens from the right foot, right calf, and right forearm provided evidence to support a formal diagnosis of small fiber polyneuropathy. (Tr. 335). Dr. Vasquez also noted that Plaintiff had urinary incontinence and vibratory sensation in both arms and legs. (Tr. 339). Dr. Vasquez suggested that an MRI of the cervical spine would help rule out any demyelinating disease that can produce symptoms of bladder incontinence and vibratory sensations in the arms and legs. (Tr. 339).

Plaintiff then cites a May 15, 2018 letter from Dr. Vasquez to Adriana Casanova, M.D. concerning Plaintiff's condition. (Doc. 35, p. 2; Tr. 317). In that letter, Dr. Vasquez's diagnosed Plaintiff with generalized small fiber polyneuropathy, which he documented by a skin nerve biopsy. (Tr. 317). At that time, Dr. Vasquez found with prescription medication, Plaintiff was doing well concerning her small fiber polyneuropathy. (Tr. 317). From an MRI, Dr. Vasquez found Plaintiff had no evidence of abnormality in the spinal cord, but had multilevel degenerative osteoarthritic and discogenic disease without any significant central spinal canal stenosis, but had moderate left neuroforamen stenosis at C4-C5. (Tr.

318). Dr. Vasquez gave Plaintiff a DMV handicap parking application based on her neurologic and arthritic condition. (Tr. 318).

Plaintiff also cites Dr. Hulley's July 1, 2019 treatment notes. (Doc. 35, p. 2). On examination, Dr. Hulley found Plaintiff's gait was regular and heal and toe were adequate but painful, she could not do a tandem gait, and a Romberg test –which tests balance – was positive. (Tr. 433). Dr. Hulley's impression was painless numbness in extremities, decreased balance with gait disturbance, and pain with use of hands, all secondary to small fiber neuropathy. (Tr. 433). Plaintiff then cites Dr. Hulley's August 19, 2019 form regarding writing, typing, and fingering in which he checked a box indicating he found Plaintiff unable to perform these tasks at a normal speed, and unable to perform these tasks at a normal speed for more than a few minutes. (Doc. 35, p. 3, Tr. 441).

In the decision, the ALJ acknowledged Plaintiff's history of paresthesia in her upper and lower extremities and her diagnosis of small fiber polyneuropathy. But the ALJ found when considering the medical records, including those records cited by Plaintiff, the physical examinations noted only mild dysesthesia with a normal grip strength and normal muscle strength in all extremities. (Tr. 22). Plus, Plaintiff cited only sporadic medical records from June and August 2017, May 2018, July 2019. And other than the first two, the remaining records were approximately a year apart. Further, in the May 2018 medical record, Dr. Vasquez found Plaintiff doing

well as to her small fiber polyneuropathy. (Tr. 317). The ALJ also considered Plaintiff's activities of daily living, such as doing light household chores with some difficulty, drive, shop, and manage her own finances. The ALJ articulated explicit and adequate reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence. Moreover, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Considering the record as a whole, substantial evidence supports the ALJ's determination as to Plaintiff's subjective complaints.

### B.    Hand-Related Limitations in the RFC

Plaintiff appears to argue that the ALJ substituted his judgment for that of Dr. Hulley by not adopting Dr. Hulley's findings in the RFC. (Doc. 34, p. 18-20). Plaintiff argues the ALJ did not understand the symptoms of small fiber polyneuropathy and this misunderstanding lead him to an incorrect assessment of the RFC. (Doc. 34, p. 18). The Commissioner argues that the ALJ had the responsibility to assess Plaintiff's RFC, not Dr. Hulley, and the ALJ properly

considered Dr. Hulley's opinion and properly assessed Plaintiff's RFC. (Doc. 34, p. 21, 27-28).

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or give any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 404.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.*

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. § 404.1513(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. § 404.1513(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. 404.1513(a)(3).

As stated above, Dr. Hulley saw Plaintiff in July 2019. Plaintiff reported to Dr. Hulley that she saw neurologist Dr. Vasquez for numbness, tingling, paresthesia,

and pain in the extremities, and that a biopsy of her nerve and skin revealed a small fiber neuropathy. (Tr. 434). Plaintiff complained of a marked decrease in her balance, poor gait, pain in her extremities, and numbness that interferes with her typing abilities. (Tr. 434). She also reported that when she attempted to type, she had a lot of pain in her fingertips from the neuropathy. (Tr. 434). Dr. Hulley found Plaintiff had pain with use of her hands secondary to her diagnosis of small fiber neuropathy. (Tr. 433). He prescribed Lyrica to reduce the pain, but also determined that Lyrica "will not reverse her other symptoms of balance poor coordination [sic] in the hands difficulty with typing, driving, climbing and weakness." (Tr. 433). The results of his examination showed no motor weakness, regular gait, but heal/toe were adequate but painful, and Plaintiff did not have a tandem gait. (Tr. 433).

Dr. Hulley also completed a brief questionnaire regarding Plaintiff's writing, typing, and fingering abilities on August 19, 2019. (Tr. 441). Dr. Hulley checked two boxes, which found Plaintiff unable to perform these tasks at normal speed and unable to perform these tasks at normal speed for more than a few minutes. (Tr. 441).

In the decision, the ALJ addressed Dr. Hulley's opinion:

> Dr. Hulley's opinion that the claimant cannot finger, type, or write at a normal speed is not persuasive. (Ex. 10F). This opinion is inconsistent with the fact that there are no objective findings anywhere in the record which show manipulative deficits in the claimant's hands. For example, EMG/NCS testing of the upper extremities in Exhibit 5F was normal. The consultative examiner in Exhibit 6F also expressly found no manipulative or upper extremity deficits during the

> examination, and the claimant had normal dexterity and range
> of motion in the hands. In addition, all other objective physical
> exam findings in Exhibits 1F, 2F, 3F, and 7F revealed no
> abnormalities or deficits in the claimant's upper extremities.
> Importantly, objective findings in Exhibit 3F/2 show the
> claimant had normal sensation, strength, and reflexes in all
> extremities.

(Tr. 23).

The ALJ supported the determination that Dr. Hulley's opinion was not persuasive as to Plaintiff's fingering, typing, or writing abilities by noting that his opinion was inconsistent with the objective findings in the record. (Tr. 23). The ALJ cited treatment notes showing upper extremity testing was normal. (Tr. 23). The ALJ also cited Jeffrey Hirschfield, M.D.'s consultative examination dated October 10, 2018. (Tr 23, 386-93). Plaintiff reported to Dr. Hirschfield that her small fiber polyneuropathy affects her extremities mostly her hands and also her bowels, bladder, and muscles. (Tr. 389). She described the pain in her hands as burning, pin-prickling, and vibratory, and reported a stinging sensation in her legs at night. (Tr. 389). As the ALJ explained, Dr. Hirschfield found no manipulative or upper extremity deficits and Plaintiff had normal dexterity and range of motion. (Tr. 23, 386-88). The ALJ also cites other physical exam findings including those of Dr. Vasquez and Dr. Hulley that revealed no abnormalities or deficits in Plaintiff's upper extremities. (Tr. 23). And specifically, Dr. Vasquez noted in the May 2018 letter to Dr. Casanova that Plaintiff is doing well as to her small fiber polyneuropathy and

she had normal sensation, motor strength, and reflexes in both her upper and lower extremities. (Tr. 23, 317-18). In sum, the ALJ considered Dr. Hulley's opinion and found that it was not persuasive because it was unsupported by and inconsistent with the evidence of record.

And as stated above, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Here, the ALJ did not substitute his judgment for that of Dr. Hulley and substantial evidence supports the ALJ's determination finding Dr. Hulley's opinion unpersuasive.[1]

## C.   Past Relevant Work

Plaintiff argues that the ALJ erred at step four of the sequential analysis when finding Plaintiff capable of performing her past relevant work as a Medical Case Management Supervisor as she actually performed it. (Doc. 34, p. 29). The Commissioner argues the ALJ relied on Plaintiff's testimony and the record

---

[1] The Court also notes that Dr. Hulley's opinion regarding Plaintiff's writing, typing, and fingering abilities is vague. Dr. Hulley found Plaintiff unable to perform these tasks at normal speed. (Tr. 441). This opinion leaves open the issue of what speed, if any, she can perform these tasks, and for what amount of time in an 8-hour day.

regarding her past relevant work as Medical Case Management Supervisor, considered her RFC, and properly found Plaintiff capable of performing her past relevant work as she actually performed it. (Doc. 34, p. 35).

Past relevant work is defined as work that a claimant had done within the past 15 years, that was substantial gainful activity, and lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). To determine past relevant work, the ALJ will ask a claimant for information about the work she did in the past. 20 C.F.R. § 404.1560(b)(2). A claimant is the primary source for vocational documentation, and statements by a claimant regarding past work as she *actually* performed it are "generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62 (1982); *see also Dukes v. Saul*, No. 8:18-cv-2553-T-SPF, 2020 WL 755393, at *4 (M.D. Fla. Feb. 14, 2020) ("In determining whether a claimant can perform past relevant work as actually performed, the ALJ may rely on the claimant's testimony. *Dukes*, 2020 WL 755393, at *4 (citing 20 C.F.R. § 404.1560(b)(2))). An ALJ is required to consider:

> (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

SSR 82-62 (1982).

Here, the ALJ compared Plaintiff's Disability Report, her Work History Report, and her testimony at the hearing with her RFC to determine whether Plaintiff was capable of performing her past relevant work as actually performed. (Tr. 24). As the ALJ noted, Plaintiff stated in a Work History Report that she had the job of Medical Case Management Supervisor. (Tr. 24, 176). In that report, Plaintiff described her job as managing 9 nurses, having a resident caseload of 300, administrative data duties, and other administrative duties. (Tr. 24, 177). She indicated she walked 1 hour, stood 0 hours, sat 7 hours, stooped 1 hour, and never knelt, crouched, crawled, handled, or reached in a workday. (Tr. 24, 177). She also indicated she wrote, typed, or handled small objects for 8 hours in a workday. (Tr. 24, 177). And she lifted less than 10 lbs. frequently. (Tr. 24, 177).

At the hearing, Plaintiff confirmed that she worked as a Medical Nurse Case Manager. (Tr. 37). She described her job as follows:

> I was the supervisor over nine nurses. I worked for the Agency for Persons with Disabilities, so I worked with individuals that had low IQs, cerebral palsy, autism, spinal bifida, and helped their representatives understand medical issues. Anybody that went in the hospital, we followed by visits, going to the hospital, working with the discharge planner to make sure that they had all their medical needs when they left.
>
> I also was in charge of, I think, oh God, eight institutions where individuals were staying there and I was their case manager and their medical representative and I made sure that they got proper health [care] due to a lawsuit where individuals did pass away in Orlando, so. . . .

> Well, before I left[,] I was spending two days in the
> office and they allowed me to work three days at home. And
> that allowed me to take breaks and rest so that I did eight hours
> but it usually was a timeframe of 12 to 14 hours.

(Tr. 24, 37-38). She also testified that she spent all day at a desk doing data entry

and typing on a computer to document her conversations. (Tr. 24, 38). She added

that she would drive to supervise people. (Tr. 38). She was not hands-on with the

patients; her job was to review all medical records. (Tr. 24, 38-39). She would also

go to group homes, read medical records, and have phone conversations with the

guardians of the patients. (Tr. 24, 39). Basically, she was a working manager with

her own case load as well as supervising others. (Tr. 39). She lifted a big metal file

when she traveled that she tried to keep under 10 lbs. (Tr. 40).

The ALJ found when comparing the demands of Plaintiff's past relevant work

with her RFC, the demands of her past relevant work did not require the performance

of work-related activities precluded by Plaintiff's RFC. (Tr. 24). He determined:

> Comparing the demands of the claimant's past relevant
> work to the residual functional capacity, the demands of the
> claimant's past relevant work do not exceed the residual
> functional capacity. The claimant's past relevant work was
> performed at the sedentary exertional level, and the residual
> functional capacity allows the claimant to perform light work.
> Furthermore, the one hour of stooping per day performed by
> the claimant while working at her past relevant work does not
> exceed the limitation in the residual functional capacity which
> allows occasional stooping.
>
> In addition, nothing in the claimant's description of her
> past relevant work requires more than concentrated exposure
> to unprotected heights, moving machinery, extreme

temperatures, extreme wetness, or extreme humidity. Therefore, the demands of the claimant's past relevant work do not exceed the environmental limitations in the residual functional capacity.

In comparing the claimant's residual functional capacity with the physical and mental demands of her past relevant work, I find the claimant is able to perform her past relevant work as she actually performed it.

(Tr. 24-25).

First, Plaintiff argues that the State Agency found Plaintiff's job was classified in the DOT[2] as a Director, Nursing Services, DOT 075.117-022, but this job does not reflect the same duties as her past relevant work. (Doc. 34, p. 29). In the decision, the ALJ did not mention the job of a Director, Nursing Services and did not find that Plaintiff's past relevant work was categorized as a Director, Nursing Services. Instead, the ALJ relied on Plaintiff's description and testimony regarding her past relevant work and classified it as a Medical Case Management Supervisor. Plaintiff adds that the ALJ did not provide "documentation" of the physical and mental demands of Plaintiff's past relevant work. While the ALJ did not classify Plaintiff's past relevant work under the DOT, the ALJ properly relied on Plaintiff's description of her job duties and her testimony to determine the physical and mental demands

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

of the job. *See* SSR 82-62 (1982); *Dukes*, 2020 WL 755393, at *4. No further documentation is required. Thus, the Court finds no error.[3]

Second, Plaintiff argues her job as a Medical Case Management Supervisor is a composite job and the ALJ should have analyzed the composite nature of the position, citing SSR 82-61. (Doc. 34, p. 29-30). Plaintiff adds that a vocational expert was needed to classify and determine the actual job or jobs Plaintiff performed. (Doc. 35, p. 7). SSR 82-61 provides three possible tests for determining whether a claimant retains the capacity to perform her past relevant work. Under the second scenario, for an ALJ to decide if a claimant may return to her past relevant work as *actually* performed, an ALJ must determine: "Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it. Under this test, where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'" SSR 82-61. Because the ALJ found Plaintiff could return to her past relevant work as *actually* performed, the ALJ did not need refer to the DOT. (Tr. 24-25).[4]

---

[3] Plaintiff adds that she is no longer a registered nurse and "[if] the past relevant work requires a nursing license, Plaintiff does not have one." (Doc. 34, p. 30). Plaintiff provides no evidence that her past relevant work required a nursing license other than pure speculation, which is insufficient to find error.

[4] For the third scenario, when a claimant retains the capacity to perform the functional demands

Under SSR 82-61, while composite jobs have significant elements of two or more occupations and have no counterpart in the DOT, the ruling suggests it may be necessary to utilize the services of a vocational expert. SSR 82-61. Here, based on Plaintiff's description and testimony of her job duties as a Medical Case Management Supervisor as she actually performed them, the ALJ was able to compare the duties of this job with Plaintiff's RFC to determine she could perform the job as actually performed, not as generally performed in the national economy. This distinction is significant. If the ALJ had determined Plaintiff could perform the job as generally performed, then the ALJ may have needed a DOT number or numbers to categorize this job, discuss if the job was a composite job, and possibly utilize a vocational expert. But that is not the case here. The ALJ properly relied on Plaintiff's description of the mental and physical requirements of her past relevant work as she performed it. Considering the record as a whole, substantial evidence supports the ALJ's determination that Plaintiff can return to her past relevant work as actually performed.

---

and job duties of past relevant work required by employers throughout the national economy, the DOT can be relied on for jobs listed in the DOT to define the job duties as *usually* performed. SSR 82-61. Here, the ALJ determined Plaintiff could perform her past relevant work as she actually performed it and thus there was no need to try to locate the job or an equivalent job in the DOT.

## III.    Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on December 13, 2021.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties